NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 23-5071

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

POLITICO LLC, et al.,

Appellants,

v.

UNITED STATES OF AMERICA,

Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA, Nos. 22-mc-100-BAH & 22-mc-104-BAH

---

PRINCIPAL BRIEF OF APPELLANTS
POLITICO LLC AND KYLE CHENEY

---

Chad R. Bowman
Charles D. Tobin
Maxwell S. Mishkin
Lauren Russell
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
bowmanchad@ballardspahr.com
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballardspahr.com

*Counsel for Appellants*

## CERTIFICATE OF APPELLANTS
## AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Appellants POLITICO LLC and Kyle Cheney certify as follows:

### A.    Parties And Amici

Appellants are POLITICO LLC and Kyle Cheney.  Appellee is the United States of America.  No other parties, intervenors, or amici appeared before the District Court or have appeared in this Court.

### B.    Ruling Under Review

The ruling under review is the Order and redacted Memorandum Opinion entered by the Honorable Beryl A. Howell, then-Chief Judge of the U.S. District Court for the District of Columbia, on February 23, 2023, denying Appellants' application for access to judicial records regarding the scope of executive privilege that former President Trump or former Trump Administration officials invoked in any judicial proceeding(s) ancillary to the grand jury investigation(s) into the 2020 presidential election and the January 6, 2021 certification of that election's results. The redacted opinion is included in the Joint Appendix and is available on LexisNexis at *In re N.Y. Times Co.*, No. 22-mc-100-BAH, 2023 U.S. Dist. LEXIS 32576 (D.D.C. Feb. 23, 2023).

## C.    Related Cases

This appeal is related to *Bloomberg L.P. v. United States*, No. 23-5073 (D.C. Cir.), which arises from a similar application for access to judicial records concerning the Government's request to hold former President Trump and/or his representatives in contempt for their responses to a grand jury subpoena seeking materials bearing classification markings that Trump retained after leaving the White House.  The ruling under review in that case is available on LexisNexis at *In re Press Application for Access to Judicial Records & Proceedings*, No. 22-mc-128-BAH, 2023 U.S. Dist. LEXIS 104648 (D.D.C. Mar. 11, 2023).

## D.    Rule 26.1 Corporate Disclosure Statement

POLITICO LLC is wholly owned by POLITICO Media Group LLC, which is, in turn, wholly owned by Axel Springer SE, and no publicly held corporation owns ten percent or more of its stock.

# **TABLE OF CONTENTS**

CERTIFICATE OF APPELLANTS AS TO PARTIES, RULINGS, AND RELATED CASES ............................................................. i

    A.    Parties And Amici ................................................................ i

    B.    Ruling Under Review ........................................................... i

    C.    Related Cases .................................................................... ii

    D.    Rule 26.1 Corporate Disclosure Statement ........................... ii

TABLE OF AUTHORITIES .......................................................... v

JURISDICTIONAL STATEMENT ................................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ................ 2

PRELIMINARY STATEMENT ...................................................... 3

STATEMENT OF THE CASE ........................................................ 4

I.     THE 2020 ELECTION AND JANUARY 6, 2021 CAPITOL RIOT ........................................................................... 4

II.    THE SPECIAL COUNSEL'S INVESTIGATION ..................... 7

III.   DISPUTES OVER EXECUTIVE PRIVILEGE SURFACE ........ 11

IV.   TRUMP IS INDICTED OVER THE CLASSIFIED MATERIALS ........... 13

V.    THE LITIGATION BELOW ........................................... 14

SUMMARY OF ARGUMENT ..................................................... 20

ARGUMENT ......................................................................... 21

I.     STANDARD OF REVIEW ............................................. 23

II.    THE DISTRICT COURT ERRED IN YIELDING TO THE EXECUTIVE BRANCH ON THE JUDICIAL QUESTION OF WHAT COURT RECORDS IT COULD AND SHOULD RELEASE ......................................................... 24

III.    THE DISTRICT COURT ERRED IN ITS "IRONIC"
        CONCLUSION THAT IT MUST WITHHOLD ANCILLARY
        RECORDS "OF INTENSE PUBLIC INTEREST" TO A
        GREATER EXTENT THAN ANCILLARY RECORDS OF
        MINIMAL PUBLIC INTEREST ...................................................27

IV.     THE DISTRICT COURT FAILED TO CONSIDER WHETHER
        THE FIRST AMENDMENT RIGHT OF ACCESS TO
        JUDICIAL OPINIONS AND ORDERS APPLIES IN THE
        CONTEXT OF ANCILLARY PROCEEDINGS, AND IF SO
        WHETHER THE GOVERNMENT CARRIED ITS BURDEN TO
        JUSTIFY SEALING.......................................................................31

        A.    The First Amendment Right Of Access To Judicial Records
              And Proceedings Applies To Court Opinions And Orders.................31

        B.    The First Amendment Right Of Access To Court Opinions
              And Orders Applies In The Context Of Ancillary
              Proceedings .........................................................................35

        C.    The Government Cannot Justify Completely Sealing These
              Opinions And Orders Of Intense Public Interest And
              Importance ..........................................................................36

CONCLUSION ................................................................................38

CERTIFICATE OF COMPLIANCE .......................................................40

CERTIFICATE OF SERVICE ..............................................................41

PERTINENT STATUTORY PROVISIONS ........................................ A-1

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banks v. Manchester*,
  128 U.S. 244 (1888).........................................................................32

*Branzburg v. Hayes*,
  408 U.S. 665 (1972).........................................................................37

*Butterworth v. Smith*,
  494 U.S. 624 (1990).........................................................................22

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)...........................................................................25

*Company Doe v. Public Citizen*,
  749 F.3d 246 (4th Cir. 2014) ...........................................................34

*Dhiab v. Trump*,
  852 F.3d 1087 (D.C. Cir. 2017)......................................31, 32, 35, 36

*Ex parte Drawbaugh*,
  2 App. D.C. 404 (D.C. Cir. 1894)....................................................26

*Globe Newspaper Co. v. Superior Court*,
  457 U.S. 596 (1982).........................................................................35

*In re Grand Jury Subpoena (Judith Miller)*
  ("*In re Judith Miller I*"), 397 F.3d 965 (D.C. Cir. 2006) ..............5, 37

*In re Grand Jury Proceedings (Judith Miller)*
  ("*In re Judith Miller II*"), 493 F.3d 152, 154 (D.C. Cir. 2007)..........34

*Leopold v. United States*,
  964 F.3d 1121 (D.C. Cir. 2020)...................................................22, 25

*Lowenschuss v. West Publishing Co.*,
  542 F.2d 180 (3d Cir. 1976) ............................................................33

*McKeever v. Barr*,
  920 F.3d 842 (D.C. Cir. 2019)............................................................4

*In re Motions of Dow Jones & Co.*,
  142 F.3d 496 (D.C. Cir. 1998)...............................................................15, 22, 27

*Nash v. Lathrop*,
  142 Mass. 29 (1886) ............................................................................34

*Nixon v. Warner Communications, Inc.*,
  435 U.S. 589 (1978)...........................................................................1, 25

*PepsiCo, Inc. v. Redmond*,
  46 F.3d 29 (7th Cir. 1995) ...................................................................33

*In re Press Appl. for Access to Judicial Records Ancillary to Certain
  Grand Jury Proceedings Concerning Former Vice President Pence
  ("In re Pence"*), No. 23-mc-35-JEB, --- F. Supp. 3d ----,
  2023 U.S. Dist. LEXIS 101128 (D.D.C. June 9, 2023)...................13, 26, 29, 30

*Richmond Newspapers, Inc. v. Virginia*,
  448 U.S. 555 (1980)............................................................................31

*In re Sealed Case*,
  199 F.3d 522 (D.C. Cir. 2000).............................................................23

*In re Sealed Case*,
  932 F.3d 915 (D.C. Cir. 2019).........................................................28, 37

*In re Sealed Case (Medical Records)*,
  381 F.3d 1205 (D.C. Cir. 2004)...........................................................23

*In re Sealed Case No. 99-3091*,
  192 F.3d 995 (D.C. Cir. 1999).........................................................28, 37

*Senate of the Commonwealth of Puerto Rico on Behalf of Judiciary
  Committee v. Department of Justice*,
  823 F.2d 574 (D.C. Cir. 1987).........................................................37, 38

*Torres v. INS*,
  144 F.3d 472 (7th Cir. 1998) ...............................................................34

*Trump v. Thompson*,
  20 F.4th 10 (D.C. Cir. 2021)...............................................................6, 7

*Union Oil Co. of California v. Leavell*,
    220 F.3d 562 (7th Cir. 2000) ...................................................................33

*United States v. El-Sayegh*,
    131 F.3d 158 (D.C. Cir. 1997)...............................................................23

*United States v. Hubbard*,
    650 F.2d 293 (D.C. Cir. 1980)................................................................1

**Other Authorities**

Federal Rule of Criminal Procedure 6 .....................................................23

H.R. Rep. No. 117-663 .............................................................................7

Local Criminal Rule 6.1 ...........................................................................14

Local Criminal Rule 57.6..........................................................................14

## **JURISDICTIONAL STATEMENT**

The District Court had jurisdiction over this action arising from its "supervisory power over its own records and files," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), and its "ancillary jurisdiction to hear and determine claims closely related to and arising out of the criminal proceedings brought before it," *United States v. Hubbard*, 650 F.2d 293, 307 (D.C. Cir. 1980).  The District Court entered a final, appealable judgment on February 23, 2023, *see* Joint Appendix ("JA") 005-06, and Appellants timely filed a Notice of Appeal on March 27, 2023, *see id*.  This Court therefore has jurisdiction over the appeal under 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

1.      Did the District Court err in denying Appellants' application for access to judicial records of unprecedented public interest that are ancillary to extraordinary grand jury proceedings, the existence of which the Government has acknowledged, involving former President Donald J. Trump?

2.      Did the District Court err in yielding to the Executive Branch on the fundamentally judicial question of what court records it could and should release?

3.      Did the District Court err in its "ironic" conclusion that it must withhold ancillary records "of intense public interest generating concomitant media attention" to a greater extent than ancillary records of minimal public interest?

4.      In the alternative, does the First Amendment right of access to judicial records apply to court opinions and orders, and if so did the Government justify sealing the opinion(s) and order(s) that the District Court issued in this extraordinary ancillary proceeding by demonstrating that sealing is essential to preserve higher values and is narrowly tailored to serve that interest?

## PRELIMINARY STATEMENT

In November 2022, U.S. Attorney General Merrick B. Garland officially disclosed the existence of two criminal investigations involving former President Donald J. Trump: one looking into his retention of classified materials after leaving the White House – which has since led to the historic first federal indictment of a former President – and the other examining his role in interfering with the 2020 presidential election and the January 6, 2021 certification of that election's results. *See* Press Release, *Appointment of a Special Counsel*, Dep't of Justice (Nov. 18, 2022), https://www.justice.gov/opa/pr/appointment-special-counsel-0.  During those investigations, federal grand juries in Washington, D.C. have sought records and testimony from Trump's colleagues and confidantes, and disputes over those investigative demands have led to a series of proceedings in the U.S. District Court for the District of Columbia.[1]  Those judicial proceedings in aid of the grand juries, known as ancillary proceedings, have addressed weighty issues – including novel constitutional issues – but they have operated almost entirely in secret, with sealed motions being argued at sealed hearings resulting in sealed opinions and orders.

Appellants POLITICO LLC and Kyle Cheney (together, "Politico") challenged that secrecy with respect to a particularly noteworthy set of judicial

---

[1] It is not clear whether similar proceedings have occurred in the U.S. District Court for the Southern District of Florida, though it is now public knowledge that a grand jury was empaneled there as well and, *inter alia*, it voted to indict Trump.

records: briefs, hearing transcripts, and court rulings addressing the scope of executive privilege asserted over communications between Trump and former Trump Administration officials.  Though the District Court recognized that "[t]he sealing of judicial decisions and ancillary judicial records relied on to resolve matters pending before the Court is anathema," and it expressed "confusion" at how to apply this Court's latest ruling on grand jury secrecy in *McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019), it denied Politico's request on the grounds that Federal Rule of Criminal Procedure 6(e) "does not permit such disclosure, at least for now and perhaps forever."  JA071-74.

The District Court erred in two important ways in reaching this result.

**<u>First</u>**, the District Court erred in considering itself compelled to defer excessively to the Executive Branch on what is fundamentally a *judicial* question of what court records it could and should release.  Indeed, the Court all but admitted as much, writing that "[a]s construed in *McKeever*, Rule 6(e) effectively empowers prosecutors to exercise *an even more rigorous gatekeeper role than deference already requires* for public disclosure of grand jury material, with a concomitant reduction in the ability of the public to scrutinize government activities at this critical stage of criminal investigations."  JA086 (emphasis added).

**<u>Second</u>**, the District Court erred in reaching what it characterized as an "ironic" legal conclusion.  The court held that, because releasing ancillary records

4

in matters "of intense public interest generating concomitant media attention" might "fill gaps in public reporting," courts must keep those particularly important records "entirely sealed in the name of grand jury secrecy while matters not regularly in national news cycles may be released with only light redactions." JA092-93.  That conclusion is not just counterintuitive, however – it is also erroneous and clearly contrary to Circuit practice, as this Court has itself released redacted opinions ancillary to high-profile matters.  *See, e.g.*, *In re Grand Jury Subpoena (Judith Miller)* ("*In re Judith Miller I*"), 397 F.3d at 965, 967, 976, *reissued*, 438 F.3d 1141 (D.C. Cir. 2006).

The ancillary records requested here unquestionably involve "novel issues, significant historical events, and nationally known individuals."  *See* JA081.  The District Court erred in keeping these records completely sealed instead of releasing them with only those narrow redactions necessary to protect any still-secret grand jury information.  This case and its companion (No. 23-5073) thus provide the Court an opportunity not only to correct the District Court's error in withholding these particular records, but also to clarify when and how the press and public can access records of ancillary proceedings more generally, including records concerning publicly known "investigation[s] of significant public interest and national importance."  JA093.  This case also offers the right circumstances for this Court to recognize that the First Amendment right of access applies to judicial

5

opinions and orders, even in ancillary proceedings, such that if the Government

intends to keep those court rulings sealed and thereby create a body of secret law,

it must carry the heavy burden required to overcome the constitutional access right

in order to do so.

    This Court should reverse the District Court's ruling and ensure the public

receives meaningful access to these enormously consequential court records.

## STATEMENT OF THE CASE

### I.     THE 2020 ELECTION AND JANUARY 6, 2021 CAPITOL RIOT

    On November 3, 2020, Joseph R. Biden, Jr. was elected President of the

United States.  Then-President Trump, however, refused to concede, "claiming that

the election was 'rigged' and characterized by 'tremendous voter fraud and

irregularities[.]'"  *Trump v. Thompson*, 20 F.4th 10, 17-18 (D.C. Cir. 2021)

(quoting Donald J. Trump, *Statement on 2020 Election Results* at 0:34-0:46, 18:11-

18:15, C-SPAN (Dec. 2, 2020), https://www.c-span.org/video/?506975-

1/president-trump-statement-2020-election-results).  "Over the next several weeks,

President Trump and his allies filed a series of lawsuits challenging the results of

the election.  The courts rejected every one of the substantive claims of voter fraud

that was raised."  *Id.* (citations omitted).  But, according to the final report of the

House Select Committee to Investigate the January 6th Attack on the United States

Capitol (the "Select Committee"), Trump "disregarded the rulings of the courts and

rejected the findings and conclusions and advice from his Justice Department, his campaign experts, and his White House and Cabinet advisors," and chose "to try to overturn the election on January 6th and took a series of very specific steps to attempt to achieve that result." H.R. Rep. No. 117-663, at 28.

Those efforts came to a head on January 6, 2021, when thousands of rioters stormed the Capitol in a "blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process." *See* Press Release, *Director Wray's Statement on Violent Activity at the U.S. Capitol Building*, FBI (Jan. 7, 2021), https://www.fbi.gov/news/press-releases/director-wrays-statement-on-violent-activity-at-the-us-capitol-building-010721. These events "marked the most significant assault on the Capitol since the War of 1812." *Trump*, 20 F.4th at 18-19. The Government has since charged more than 1,000 defendants with crimes related to the Capitol riot. *See* Capitol Breach Cases, Dep't of Justice, https://www.justice.gov/usao-dc/capitol-breach-cases.

## II.    THE SPECIAL COUNSEL'S INVESTIGATION

In November 2022, U.S. Attorney General Merrick Garland appointed Jack Smith as Special Counsel "to conduct the ongoing investigation into whether any person or entity violated the law in connection with efforts to interfere with the lawful transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021." *See*

Off. of the Att'y Gen. Order No. 5559-2022 at 1 (Nov. 18, 2022),

https://www.justice.gov/opa/press-release/file/1552896/download.  Attorney

General Garland also authorized the Special Counsel to "prosecute federal crimes

arising from the investigation of these matters and refer to the appropriate United

States Attorney discrete prosecutions that may arise from the Special Counsel's

investigation."  *Id.* at 2.

Over the following months, the public learned about multiple grand jury

subpoenas issued by the Special Counsel in connection with that investigation,

including subpoenas to local officials in states where Trump claimed that the

election was "rigged."  *See* Amy Gardner et al., *Justice Dept. subpoenas Ariz.,*

*Mich., Wis. officials in Trump Jan. 6 probe*, The Washington Post (Dec. 6, 2022),

https://www.washingtonpost.com/politics/2022/12/06/jack-smith-trump-

communications-subpoenas/.  These subpoenas reflect that the Special Counsel

sought "any and all communications in any form to, from, or involving Donald J.

Trump for President, Inc. . . , Donald J. Trump, or any employee or agent of, or

attorney for the Trump Campaign."  *See* Allan Smith et al., *Special counsel Jack*

*Smith subpoenas local officials in Trump investigation*, NBC News (Dec. 6, 2022),

https://www.nbcnews.com/politics/donald-trump/special-counsel-jack-smith-

subpoenas-local-officials-trump-investigati-rcna60363.

In May 2022, the public learned that investigators had expanded their focus to include "the creation of alternate slates of pro-Trump electors seeking to overturn Joseph R. Biden Jr.'s victory in the 2020 election, with a particular focus on a team of lawyers that worked on behalf of President Donald J. Trump." *See* Alan Feuer et al., *Intensifying Inquiry Into Alternate Electors Focuses on Trump Lawyers*, The New York Times (May 25, 2022), https://www.nytimes.com/2022/05/25/us/politics/pro-trump-lawyers-elector-scheme.html, JA023-26. According to that news report, grand jury subpoenas were issued to Trump lawyers Rudolph W. Giuliani and John Eastman, among others. *Id.*

Later in the summer of 2022, the public learned that Marc Short, former chief of staff to former Vice President Mike Pence, appeared before the grand jury, and that former Pence counsel Greg Jacob testified as well. *See, e.g.*, Alan Feuer & Maggie Haberman, *Top Pence Aides Testify to Grand Jury in Jan. 6 Investigation*, The New York Times (July 25, 2022), https://www.nytimes.com/2022/07/25/us/politics/marc-short-pence-jan-6.html, JA028-29. In the following weeks, former Trump White House counsel Pat Cipollone, deputy counsel Patrick Philbin, and Trump lawyer Eric Herschmann also reportedly received similar subpoenas. *See* Betsy Woodruff Swan, *Justice Department subpoenas Trump White House lawyer Eric Herschmann*, Politico (Aug. 15, 2022), https://www.politico.com/news/2022/08/15/justice-department-subpoenas-trump-

lawyer-eric-herschmann-00051899, JA033-37; *see also* Spencer S. Hsu, *Trump White House counsel Cipollone appears before Jan. 6 grand jury*, The Washington Post (Sept. 2, 2022), https://www.washingtonpost.com/dc-md-va/2022/09/02/cipollone-philbin-jan6-grand-jury/ (noting that Cipollone and Philbin were observed at courthouse to appear before grand jury), JA040-42.

In mid-September 2022, the public learned that approximately 40 additional grand jury subpoenas had been served, including on a number of individuals associated with either the Trump Administration or the Trump campaign, seeking information on the fake elector plan. *See* Glenn Thrush et al., *Justice Dept. Issues 40 Subpoenas in a Week, Expanding its Jan. 6 Inquiry*, The New York Times (Sept. 12, 2022), https://www.nytimes.com/2022/09/12/us/politics/trump-aides-jan-6-doj.html ("The new subpoenas encompass a wide variety of those in Mr. Trump's orbit, from low-level aides to his most senior advisors."), JA044-45. A number of the witnesses had previously provided public testimony to the House Select Committee, and counsel for one of the subpoena recipients, Bernard B. Kerik, confirmed the grand jury subpoena. *Id.*

## III.    DISPUTES OVER EXECUTIVE PRIVILEGE SURFACE

Also in September 2022, the public learned about certain emails exchanged between Trump's lawyers and former Trump White House lawyer Eric Herschmann, which revealed that Herschmann had "tried to get specific guidance

from Mr. Trump's current lawyers on how to handle questions from prosecutors that raise issues of executive privilege or attorney-client privilege." *See* Maggie Haberman & Glenn Thrush, *Trump's Team of Lawyers Marked by Infighting and Possible Legal Troubles of Its Own*, The New York Times (Sept. 16, 2022), https://www.nytimes.com/2022/09/16/us/politics/trump-lawyers-herschmann.html, JA047-49.  The New York Times, which obtained these emails, reported that "[a]fter ignoring Mr. Herschmann or giving him what he seemed to consider perplexing answers to the requests for weeks," two of Trump's lawyers advised him to "[a]ssert sweeping claims of executive privilege." *Id.*

The public subsequently learned of a closed hearing in September 2022, regarding a motion filed on or about September 1 by lawyers for former President Trump to assert executive privilege.  As The New York Times noted in its analysis of the importance of the privilege issue being litigated:

> In the Jan. 6 investigation, the Justice Department has obtained grand jury subpoenas for several former aides to Mr. Trump seeking testimony about his conversations. Mr. Trump's lawyers have instructed them not to answer questions, based on a broad conception of his residual powers of executive privilege, even though Mr. Biden has rejected the idea as not in the best interests of the United States.
>
> A dispute over whether those witnesses may lawfully decline to answer certain questions is now playing out before Beryl Howell, the chief judge of the Federal District Court for the District of Columbia, behind closed doors, according to people familiar with the matter.

11

*See* Charlie Savage & Glenn Thrush, *Jan. 6 and Mar-a-Lago Inquiries Converge in Fights Over Executive Privilege*, The New York Times (Sept. 30, 2022), https://www.nytimes.com/2022/09/30/us/politics/trump-executive-privilege.html, JA059-62.  The Washington Post later reported that then-Chief Judge Beryl A. Howell issued a sealed decision on the scope of the privilege – and that this Court declined an emergency motion to stay that testimony.  *See* Spencer S. Hsu et al., *Judge bucks Trump, orders Pence aide to testify to Jan. 6 grand jury*, The Washington Post (Oct. 14, 2022), https://www.washingtonpost.com/dc-md-va/2022/10/14/marc-short-grand-jury-testify-pence-trump, JA064-66.

In February 2023, Pence announced that he, too, had received a subpoena from the Special Counsel.  *See* Melissa Quinn & Jonah Kaplan, *Pence confirms he'll resist subpoena from special counsel in Trump probes*, CBS News (Feb. 15, 2023), https://www.cbsnews.com/news/mike-pence-subpoena-challenge-special-counsel-jack-smith-trump-investigation/.  Pence stated that he would resist the subpoena, based on the Vice President's role as president of the Senate under the Constitution's Speech or Debate Clause, while Trump separately challenged the subpoena on grounds of executive privilege and accused the Department of Justice of "attempting to destroy the long accepted, long held, Constitutionally based standards of attorney-client privilege and executive privilege."  *See, e.g.*, Kyle Cheney, *Trump appeals order for Pence to testify in Jan. 6 probe*, Politico (Apr.

12

10, 2023), https://www.politico.com/news/2023/04/10/trump-appeal-pence-january-6-testimony-00091231.[2]

## IV.     TRUMP IS INDICTED OVER THE CLASSIFIED MATERIALS

On June 9, 2023, the U.S. District Court for the Southern District of Florida unsealed the indictment in *United States v. Trump*, Case No. 23-cr-80101-AMC (the "Indictment"), which reveals that the Government obtained communications between Trump and at least two of his attorneys, including communications that one of those attorneys "memorialized." *See* Indictment ¶¶ 54, 55, 66. Based in part on these communications, the Indictment charges that Trump conspired "to keep classified documents he had taken with him from the White House and to hide and conceal them from a federal grand jury." *See id.* ¶¶ 80-81.

All told, the Indictment charges Trump with 31 counts of Willful Retention of National Defense Information in violation of 18 U.S.C. § 793(e), one count of Conspiracy to Obstruct Justice in violation of 18 U.S.C. § 1512(k), one count of Withholding a Document or Record in violation of 18 U.S.C. §§ 1512(b)(2)(A) & 2, one count of Corruptly Concealing a Document or Record in violation of 18

---

[2] On June 9, 2023, Chief Judge James E. Boasberg granted another press application, also filed by undersigned counsel and similar to the one at issue here, for access to ancillary records concerning Pence's assertion of the "speech or debate" privilege. *See In re Press Appl. for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former Vice President Pence* ("*In re Pence*"), No. 23-mc-35-JEB, --- F. Supp. 3d ----, 2023 U.S. Dist. LEXIS 101128, at *1 (D.D.C. June 9, 2023). The Government chose not to appeal that decision.

U.S.C. §§ 1512(c)(1) & 2, one count of Concealing a Document in a Federal Investigation in violation of 18 U.S.C. §§ 1519 & 2, one count of engaging in a Scheme to Conceal in violation of 18 U.S.C. §§ 1001(a)(1) & 2, and one count of making False Statements and Representations in violation of 18 U.S.C. §§ 1001(a)(2) & 2.  *See id.* ¶¶ 76-92.

On June 13, 2023, Trump was arrested and arraigned in the Southern District of Florida and pleaded not guilty to the charges against him.  *See* Minute Order, *United States v. Trump*, ECF No. 16.  He was released on his own recognizance. *See* Personal Recognizance Bond, *United States v. Trump*, ECF No. 17.

## V.     THE LITIGATION BELOW

The U.S. District Court for the District of Columbia has established a set of procedures, codified in its Local Criminal Rules, to facilitate public access to the records of judicial proceedings ancillary to grand jury matters.  Local Criminal Rule 6.1 directs that such ancillary proceedings must "be assigned to the Chief Judge" and that all filings in those proceedings must be submitted "under seal," while also providing that "[p]apers, orders and transcripts of hearings subject to this Rule, or portions thereof, may be made public by the Court on its own motion or on motion of any person upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury."  Local Criminal Rule 57.6 then sets the terms for such an access motion, providing that "[a]ny news

organization or other interested person, other than a party or a subpoenaed witness, who seeks . . . relief relating to a criminal investigative or grand jury matter, shall file an application for such relief with the Court," and that "[a]n application that pertains to a criminal investigative or grand jury matter to which no judge has been assigned shall be referred by the Clerk to the Chief Judge for determination."

This Court has declared that, upon receiving a request for access to the records of ancillary proceedings, "if the Chief Judge *can* allow some public access without risking disclosure of grand jury matters," then providing such access "*shall* be done*" in conformity with Rule 6(e). *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 502 (D.C. Cir. 1998) (emphasis added). The Court also clarified that the press and public are "not, in any event, barred from receiving non-protected details about what transpired before the court," and it noted with approval that, "pursuant to the Chief Judge's directive," the district court had already begun "the process of redacting transcripts of proceedings involving executive privilege." *Id.* at 504.

Pursuant to those Local Rules and Circuit precedent, on October 18, 2022, Politico and its reporter Kyle Cheney submitted a letter to then-Chief Judge Howell asking to unseal "all documents filed with this Court related to former President Trump's privilege challenge to the Jan. 6 grand jury investigation," and noting that "[i]t's hard to imagine a weightier constitutional question for the courts to decide than the interplay between current and former presidents on matters of

15

executive privilege that may bear on national security." *See* Appl. at 1, *In re Appl. of Politico and Kyle Cheney to Unseal All Documents Related to the Jan. 6 Grand Jury Investigation*, No. 22-mc-104-BAH (D.D.C. Oct. 26, 2022), ECF No. 1, JA067. Chief Judge Howell deemed the letter an application under Rule 57.6 and docketed it as a miscellaneous action. *See* JA007.

Three days later, The New York Times and its journalist Charlie Savage filed a similar application seeking "access to dockets, court opinions and orders, legal briefing, and argument transcripts, including such materials regarding the scope of executive privilege invoked by former President Donald J. Trump or former Trump Administration officials." *See* Appl. at 1, *In re Appl. of The New York Times Co. and Charlie Savage for Access to Certain Dockets, Orders, Legal Briefing, and Argument Transcripts Ancillary to Jan. 6 Grand Jury Proceedings* ("*In re New York Times*"), No. 22-mc-100-BAH (D.D.C. Oct. 25, 2021), ECF No. 1, JA009-66. On October 26, 2022, the District Court consolidated the two miscellaneous matters. *See* JA007 (Minute Order of Oct. 26, 2022).

On November 15, 2022, the Government filed a sealed, *ex parte* motion for leave to file under seal its opposition to the press applications. *See* Notice of Filing at 1, *In re New York Times*, ECF No. 8. The District Court granted that motion in part the same day, allowing the Government to file its response under seal but declining to seal the order granting that request. *See* Order, *id.*, ECF No. 9.

16

On February 7, 2023, the District Court called for supplemental briefing on two questions. The District Court's first question concerned its "authority to unseal judicial opinions, in whole or in part, related to grand jury investigations, whether ongoing or closed" in light of this Court's decision in *McKeever*. The District Court's second question asked "whether, ironically, judicial decisions arising from grand jury matters garnering little to no press attention may necessitate fewer redactions to preserve grand jury secrecy than those judicial decisions arising from grand jury matters subject to intense press attention such that the latter decisions may not be released by the Court at all." *See* JA004 (Minute Order of February 7, 2023). The parties responded as directed.

On February 23, 2023, the District Court issued a redacted Memorandum Opinion denying the consolidated access application in full. JA005-06. The Opinion begins by observing that "[t]he sealing of judicial decisions and ancillary judicial records relied on to resolve matters pending before the Court is anathema, 'reflecting the antipathy of a democratic country to the notion of 'secret law,' inaccessible to those who are governed by that law.'" JA071 (quoting *Leopold v. United States*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (Garland, J.)). It also notes that "courts have long recognized that the press plays a critical role in facilitating public access and acknowledged that '[o]ne of the demands of a democratic society is that the public should know what goes on in courts by being told by the press

what happens there, to the end that the public may judge whether our system of criminal justice is fair and right.'"  JA071-72 (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 n.9 (1980)).

According to the Opinion, however, "applicable procedural rules and binding precedent require that public access to judicial records must give way in the face of compelling interests requiring that grand jury material remain out of public view, *perhaps forever*, when unsealing would reveal 'a matter occurring before the grand jury,' except in limited, enumerated circumstances."  JA072 (emphasis in original) (quoting Fed. R. Crim. P. 6(e)).  The Opinion thus acknowledges that this case "highlights the tension that lies between the important policies underlying grand jury secrecy, as currently codified in Rule 6(e), and 'the always strong presumption in favor of public access to judicial proceedings.'"  *Id.* (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980)).

The Opinion resolves that tension in favor of secrecy, concluding that the District Court cannot unseal any of the requested judicial records on the basis that "continued secrecy of certain details about that investigation is required for the sake of grand jury witnesses and the government's investigation," and that "[r]edacting information in those materials would not sufficiently uphold that secrecy because matters occurring before the grand jury are so deeply intertwined with non-secret information that any partially unsealed record would prove useless,

18

or worse, misleading." JA097. Indeed, the District Court stated that even where, as here, the Government acknowledged the existence of the grand jury investigation, courts cannot reveal so much as the "legal standards relevant to the dispute" because, "despite being general summaries, [they] only become relevant if certain events occurred before the grand jury, so revealing applicable law would consequently disclose the strategy and nature of the investigation." JA098.

At the same time, the District Court expressed fundamental concerns about the pervasive secrecy it believed Rule 6(e) requires. As the District Court observed, one consequence of sealing ancillary proceedings is that "decisions implicating novel issues, significant historical events, and nationally known individuals and entities – for instance, interpreting the contours of constitutional rights and testimonial privileges asserted by political figures – are known only to the witnesses and/or privilege holders raising the issues and are withheld from the public," and that "[e]ven parties litigating similar disputes and judges deciding them will not have access, at least immediately, to certain decisions and legal reasoning because of the secrecy Rule 6(e) demands." JA082. The District Court also admitted confusion over how to determine when continued sealing of "a matter occurring before the grand jury" is "necessary" under Rule 6(e) – particularly without the inherent authority to unseal grand jury materials following *McKeever*. JA072.

19

On March 27, 2023, Politico timely noticed an appeal from the District Court's ruling. JA005. This Court subsequently denied a motion to consolidate this appeal with its companion case, No. 23-5073, though it directed the Clerk "to calendar these cases for oral argument on the same day and before the same panel." *See* Order of May 17, 2023 (per curiam).

## SUMMARY OF ARGUMENT

The District Court erred in two ways in denying Appellants access to judicial records of unprecedented public interest and unquestionable importance concerning Trump's assertions of executive privilege in the investigation of his role in interfering in the 2020 election and fomenting the January 6, 2021 riot.

First, the District Court erred in yielding to the Executive Branch more "than deference already requires" on what is solely a judicial question of what court records it could and should release. JA086. Second, the District Court erred in concluding that, because the release of ancillary records in matters "of intense public interest generating concomitant media attention" might "fill gaps in public reporting," courts must keep particularly noteworthy records "entirely sealed in the name of grand jury secrecy while matters not regularly in national news cycles may be released with only light redactions." JA092-93. Because these were errors of law, they constitute abuse of discretion.

20

The District Court also did not consider the First Amendment right of access to judicial opinions and orders. If this Court holds that this constitutional right of access applies, then the Government can justify sealing the opinion(s) and order(s) adjudicating claims of executive privilege – and creating a body of secret law – only by demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.

For each of these reasons, the decision below should be vacated and the case remanded for reconsideration.

## **ARGUMENT**

As the Special Counsel's work continues, it has become clear that Trump's communications with his allies and advisors may be a critical factor in the decision of whether to indict him for interfering in the 2020 election or fomenting the January 6, 2021 Capitol riot. Communications with his counsel and staff already have formed a central basis of the Florida indictment in connection with Trump's retention of classified documents after leaving the White House. *See, e.g.*, Indictment ¶¶ 52-56, 59, 65-66, 81(a), 81(c), 83 (quoting from and discussing Trump's communications with his attorneys). Trump, however, has attempted to prevent the Government from obtaining those communications by asserting executive privilege. *See* Kyle Cheney, *Trump appeals order for Pence to testify in Jan. 6 probe*, Politico (Apr. 10, 2023), https://www.politico.com/news/2023/04/10/

trump-appeal-pence-january-6-testimony-00091231.  It is thus beyond question that, because these communications are a keystone in the investigations and prosecutions of the former President, the public has a powerful interest in understanding the arguments for and against claims of executive privilege, the District Court's process in adjudicating those claims, and the decisions that the District Court ultimately reached on those claims.  *See, e.g.*, *Dow Jones*, 142 F.3d at 503 ("There can be no doubt that assertions of executive privilege are rightly matters of intense public interest.").

In these circumstances, the District Court erred in concluding that federal grand jury secrecy rules stand in the way of providing the public with *any* of this important information.  *Cf. Butterworth v. Smith*, 494 U.S. 624, 630 (1990) ("the invocation of grand jury interests is not some talisman that dissolves all constitutional protections") (internal marks omitted).[3]  Because the requested records are of matters ancillary to a grand jury proceeding, the justification for sealing extends only to those discrete portions that would reveal "matters occurring

---

[3] In *Butterworth*, the Supreme Court held that a state law barring grand jury witnesses from disclosing the testimony they had provided violates the First Amendment, noting the Court must balance "First Amendment rights against [the state's] interest in preserving the confidentiality of its grand jury proceedings." 494 U.S. at 630.  Here, too, the interest in grand jury secrecy must be balanced against the value of "public access to records of a judicial proceeding," which, "[l]ike the First Amendment . . . produce[s] an informed and enlightened public opinion." *Leopold*, 964 F.3d at 1127 (citations omitted).

before the grand jury." Fed. R. Crim. P. 6(e).  The District Court therefore could, and should, have unsealed the records with only those redactions essential to protect the information, if any, that still remains secret before the grand jury.

## I.    STANDARD OF REVIEW

Where appellants assert "a limited right of access" to the records of ancillary proceedings "pursuant to [Local] Rule 6.1," this Court reviews the District Court's decisions under that rule "for abuse of discretion." *In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000).  But "[b]ecause a 'district court by definition abuses its discretion when it makes an error of law, the 'abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" *In re Sealed Case (Med. Recs.)*, 381 F.3d 1205, 1211 (D.C. Cir. 2004) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).  When addressing "the question of whether a right of access (under the First Amendment or at common law) exists at all," this Court's review is "de novo." *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997).

## II.   THE DISTRICT COURT ERRED IN YIELDING TO THE EXECUTIVE BRANCH ON THE JUDICIAL QUESTION OF WHAT COURT RECORDS IT COULD AND SHOULD RELEASE.

The District Court aptly observed that "public access to judicial records 'is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch,'" and that this principle reflects "the

23

antipathy of a democratic country to the notion of 'secret law,' inaccessible to those who are governed by that law." JA071 (quoting *Leopold*, 964 F.3d at 1127). And the District Court correctly recognized that it had the authority to unseal the judicial records that Appellants requested because the Federal Rules of Criminal Procedure require that "[r]ecords, orders, and subpoenas related to grand-jury proceedings must be kept under seal," but *only* "to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury.'" JA072 (citing Fed. R. Crim. P. 6(e)(6)). The District Court erred, however, in excessively deferring to the Government in deciding whether the continued sealing of the particular ancillary records at issue here is "necessary."

According to the District Court, following this Court's ruling in *McKeever* that federal judges lack the inherent authority to unseal grand jury materials, "how district courts are to evaluate when sealing is no longer 'necessary' remains a puzzle – except when prosecutors alert the court that based on the status of, or events related to, the criminal investigation, grand jury matters may be unsealed." JA085. Indeed, the court wrote that "[a]s construed in *McKeever*, Rule 6(e) effectively empowers prosecutors to exercise an even more rigorous gatekeeper role than deference already requires for public disclosure of grand jury material, with a concomitant reduction in the ability of the public to scrutinize government activities at this critical stage of criminal investigations." JA086. Having provided

24

such deference to the Government and "considered the government's explanation for its position in favor of continued secrecy," the District Court sided with the Government "that redactions would not suffice to disclose any materials without revealing grand jury matters and so maintaining sealing is necessary." JA097.

The Court's excessive deference to what it called the Government's "gatekeeper role" led to its erroneously keeping judicial records concealed from public view. Under basic separation of powers principles, the Judicial Branch, *not* the Executive Branch, is the "gatekeeper" of the court's docket and decides what judicial records can and should be released. "It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812)). Among these is the "supervisory power over [the court's] own records and files." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). And this power is surely at its apex when the court is exercising that authority over its own opinions and orders, because "[c]ourt decisions are the 'quintessential business of the public's institutions.'" *Leopold*, 964 F.3d at 1128 (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)). Indeed, for more than a century, this Court has refused to let the Executive Branch dictate sealing of

25

court records.  *See Ex parte Drawbaugh*, 2 App. D.C. 404, 405 (D.C. Cir. 1894) (refusing to seal record despite patent secrecy regulation, as "this is a public court of record, governed by very different principles and considerations, in respect to its records and proceedings, from those that apply to an executive department").

The District Court thus erred in ascribing to the Executive Branch a "gatekeeper role" and deferring in the decision of what court records the court could release.  This error becomes even clearer in comparing the decision below with the more recent District Court ruling in *In re Pence*, where Chief Judge Boasberg rejected the Government's argument, identical to the one made below in this case, that all of the ancillary records the press requested "'must be kept entirely under seal' because 'information protected by Rule 6(e) is inextricably intertwined with material that is no longer protected' and cannot be redacted out." *In re Pence*, 2023 U.S. Dist. LEXIS 101128, at *15 (quoting Government's brief). As Chief Judge Boasberg put it, "The material protected by Rule 6(e) in the documents the Court releases today is no 'leaven in a loaf of bread' that 'cannot be separated out.'  On the contrary, it is crust that may be neatly pared away."  *Id.* (quoting *In re North*, 16 F.3d 1234, 1242 (D.C. Cir. 1994)).[4]

---

[4] The Government declined to appeal this ruling and the requested records were promptly unsealed with only those redactions the court deemed necessary under Rule 6(e).  Minute Order, *In re Pence*, No. 23-mc-35-JEB (D.D.C. June 9, 2023).

Here, by contrast, the District Court took the position that for court records of ancillary proceedings, it is the prosecution's "gatekeeper role" to distinguish leaven from crust in determining whether it could release the records with redactions or not at all.  Because that reasoning erroneously yields to the Executive Branch on what is exclusively a judicial decision, this Court should "vacate the order insofar as it denied the motion for redacted versions of the . . . papers and remand the case for reconsideration."  *Dow Jones*, 142 F.3d at 505.

## III.     THE DISTRICT COURT ERRED IN ITS "IRONIC" CONCLUSION THAT IT MUST WITHHOLD ANCILLARY RECORDS "OF INTENSE PUBLIC INTEREST" TO A GREATER EXTENT THAN ANCILLARY RECORDS OF MINIMAL PUBLIC INTEREST.

The District Court also erred in treating the ancillary records requested here, which concern a dispute of enormous public interest and far-reaching importance between the current Executive Branch and the former President, as *less* amenable to public access than "matters not regularly in national news cycles," which "may be released with only light redactions, perhaps limited to blocking the names of witnesses and targets."  JA093.  The District Court observed that, as a perverse result, "judicial decisions and other records in a grand jury investigation of significant public interest and national importance may remain under seal for years, if not forever."  *Id.*

This Court has not embraced that erroneous view of access to ancillary proceedings.  Instead, this Court has repeatedly affirmed – and itself engaged in –

27

the practice of releasing judicial records of proceedings ancillary to well-publicized grand jury investigations with redactions to protect the still-secret inner workings of those grand juries.  An instructive example is *In re Sealed Case No. 99-3091*, 192 F.3d 995 (D.C. Cir. 1999), which also involved a grand jury hearing evidence about the actions of a President.  That case concerned contempt proceedings against the Office of Independent Counsel Kenneth Starr, where a prosecutor spoke to the press about internal discussions of whether to indict then-President Clinton for, among other things, allegedly lying to the grand jury.  192 F.3d at 997-98.  This Court released that decision with some redactions to protect grand jury material, *id.*, and went on to hold that what the prosecutor had told the press was *not* the type of material that would "elucidate the inner workings of the grand jury," and therefore the prosecutor had not violated Rule 6(e), *id.* at 1001-02, because Clinton's "status as a witness before the grand jury was a matter of widespread public knowledge" already, including because Clinton himself had announced that fact, *id.* at 1004.

This Court proceeded similarly in *In re Sealed Case*, 932 F.3d 915, 918-19 (D.C. Cir. 2019), which concerned three Chinese banks' challenges to grand jury subpoenas and a Patriot Act subpoena issued in connection with an ongoing investigation of the evasion of sanctions against North Korea.  Under the erroneous theory that the District Court embraced here, because press reports had previously

28

identified those banks,[5] this Court should have kept its entire ruling under seal to avoid filling "gaps" in that reporting.  But the Court released a redacted ruling.  *Id.*

Here, again, the error in the District Court's approach becomes even clearer in comparing the decision below to *In re Pence*, where Chief Judge Boasberg observed that "[c]ourts in this district . . . have regularly released filings and transcripts of proceedings ancillary to a grand jury's investigation while the ongoing investigation proceeded under close media scrutiny," and that "it is typically in response to inquiries from the media that such material is released." 2023 U.S. Dist. LEXIS 101128, at **23-24.  Indeed, Chief Judge Boasberg noted that "[a]mid a grand jury's investigation into 'Monica Lewinsky and [then-]President Clinton,' during which 'the press ha[d]' for months 'staked out the courthouse, photographing and attempting to intercept anyone who[ ] . . .  might shed light on the grand jury's progress,' the D.C. Circuit permitted the Chief Judge to release redacted hearing transcripts 'consistent with the limits of Rule 6(e)(6)' and the Court's Local Rules."  *Id.* at *24 (quoting *Dow Jones*. 142 F.3d at 498, 506).  Likewise, "[n]early two decades later," this Court "issued a lengthy,

---

[5] *See, e.g.*, Spencer S. Hsu, *Chinese bank involved in probe on North Korean sanctions and money laundering faces financial 'death penalty,'* The Washington Post (June 24, 2019), https://www.washingtonpost.com/local/legal-issues/chinese-bank-involved-in-probe-on-north-korean-sanctions-and-money-laundering-faces-financial-death-penalty/2019/06/22/0ccef3ba-81be-11e9-bce7-40b4105f7ca0_story.html.

minimally redacted opinion in another high-profile grand-jury-related appeal, this one concerning a contempt order issued against a set of reporters who refused to comply with a grand jury's subpoena investigating reporting on the Iraq War," where the "redacted opinion previewed the information the grand jury sought, canvassed the parties' legal arguments, and detailed the court's reasoning." *Id.* (quoting *In re Judith Miller I*, 397 F.3d at 965, 967, 976).

The District Court erred, therefore, in deciding to disfavor releasing redacted ancillary records where, as here, the Government has publicly acknowledged the existence and subject of the underlying grand jury investigation and that subject is a matter of surpassing public interest and importance. Just as in *Dow Jones*, therefore, the Court should vacate the decision below and remand the matter back to the District Court so that it can reconsider Appellants' request for access under the proper standards for unsealing ancillary judicial records.

## IV. THE DISTRICT COURT FAILED TO CONSIDER WHETHER THE FIRST AMENDMENT RIGHT OF ACCESS TO JUDICIAL OPINIONS AND ORDERS APPLIES IN THE CONTEXT OF ANCILLARY PROCEEDINGS, AND IF SO WHETHER THE GOVERNMENT CARRIED ITS BURDEN TO JUSTIFY SEALING.

Separate and apart from the errors discussed above, which concern *discretionary* access to ancillary judicial records under Federal Rule 6(e) and Local Rule 6.1, the District Court erred in failing to consider whether the powerful First Amendment *right* of access to judicial opinions and orders applies in ancillary

proceedings.  Properly reviewing that question de novo, this Court should conclude that the First Amendment right of access applies in this context and that if the Government wants to seal the "decisions implicating novel issues, significant historical events, and nationally known individuals and entities" at issue here, *see* JA070, then the Government must carry its heavy burden to overcome that right.

### A.    The First Amendment Right Of Access To Judicial Records And Proceedings Applies To Court Opinions And Orders.

In *Richmond Newspapers,* the Supreme Court recognized that "the right to attend criminal trials is implicit in the guarantees of the First Amendment," as "without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and 'of the press could be eviscerated.'"  448 U.S. at 580 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)).  The Supreme Court and lower courts have since then identified additional categories of proceedings and records to which the right of access attaches, and "sketched a two-stage process for resolving whether the First Amendment affords the public access to a particular judicial record or proceeding."  *Dhiab v. Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring).

"First the court must determine whether a qualified First Amendment right of public access exists."  *Id.*  To make that determination, "the Supreme Court has identified two requirements that it calls the tests of experience and logic.  The experience inquiry looks to whether the proceeding has historically been open.

31

And the somewhat oddly-labeled logic inquiry asks whether the right of access plays an essential role in the proper functioning of the judicial process and the government as a whole." *Id.* at 1103 (internal marks omitted) (quoting *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise II*"), 478 U.S. 1, 9, (1986), and *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1331-32 (D.C. Cir. 1985) (Scalia, J.)). "Both tests must be satisfied before we can conclude that the First Amendment provides a qualified right of access." *Id.* If the right of access applies, then the records or proceedings "may be sealed but only if 'specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 1092 (quoting *Press-Enterprise II*, 478 U.S. at 13-14).

Both experience and logic favor access to court opinions and orders. In terms of experience, there is perhaps no type of judicial record more firmly established in our common law system as traditionally available to the public than court orders and decisions. As the Supreme Court explained more than a century ago, "The whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a constitution or a statute." *Banks v. Manchester*, 128 U.S. 244, 253 (1888). Put another way:

> As ours is a common-law system based on the "directive force" of
> precedents, its effective and efficient functioning demands wide

dissemination of judicial decisions. . . . Even that part of the law
which consists of codified statutes is incomplete without the
accompanying body of judicial decisions construing the statutes.
Accordingly, under our system of jurisprudence the judiciary has the
duty of publishing and disseminating its decisions.

*Lowenschuss v. W. Publ'g Co*., 542 F.2d 180, 185 (3d Cir. 1976); *see also Union
Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) ("[I]t should go
without saying that the judge's opinions and orders belong in the public domain.")*;
PepsiCo, Inc. v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995) ("Opinions are not the
litigants' property. They belong to the public, which underwrites the judicial
system that produces them.").

In terms of logic, it is likewise hard to overstate the importance of access to
opinions and orders. Such decisions *are* the law, and in our common law system
each ruling contributes to a body of precedent that has historically recognized the
vital importance of public access:

The decisions and opinions of the justices are the authorized
expositions and interpretations of the laws, which are binding upon all
the citizens. They declare the unwritten law, and construe and declare
the meaning of the statutes. Every citizen is presumed to know the
law thus declared, and it needs no argument to show that justice
requires that all should have free access to the opinions, and that it is
against sound public policy to prevent this, or to suppress and keep
from the earliest knowledge of the public the statutes, or the decisions
and opinions of the justices. Such opinions stand, upon principle, on
substantially the same footing as the statutes enacted by the
legislature. It can hardly be contended that it would be within the
constitutional power of the legislature to enact that the statutes and
opinions should not be made known to the public.

*Nash v. Lathrop*, 142 Mass. 29, 29-36, (1886); *accord Torres v. INS*, 144 F.3d 472, 474 (7th Cir. 1998) ("The idea of secret laws is repugnant.  People cannot comply with laws the existence of which is concealed.").  Moreover, access to opinions and orders promotes public confidence in and supervision of the courts.  *See, e.g.*, *Co. Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014) ("Without access to judicial opinions, public oversight of the courts, including the processes and the outcomes they produce, would be impossible.").

Public access to judicial opinions and orders thus passes the tests of both experience and logic, and the First Amendment right of access applies accordingly.

### B.    The First Amendment Right Of Access To Court Opinions And Orders Applies In The Context Of Ancillary Proceedings.

The Government may argue that even if the First Amendment right of access applies to court opinions and orders generally, it does not apply to opinions and orders issued in ancillary proceedings, and to be sure the Government could cite this Court's statement that "[a]lthough public access plays an important role in other aspects of the judicial process, 'there is no First Amendment right of access to grand jury proceedings,' nor do First Amendment protections extend to ancillary materials dealing with grand jury matters, such as [a] concurring opinion."  *In re Grand Jury Proceedings (Judith Miller)* ("*In re Judith Miller II*"), 493 F.3d 152, 154 (D.C. Cir. 2007) (quoting *Dow Jones*, 142 F.3d at 499, 502).  But the Supreme

34

Court rejected that approach to analyzing the scope of the constitutional right of access in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982).

There, the Commonwealth of Massachusetts argued that although there is a right of access to criminal trials, that right should not extend to criminal trials specifically involving sex crimes against minors, because "criminal trials have not always been open to the press and general public during the testimony of minor sex victims." 457 U.S. at 605 n.13. As the Court explained, it had already "discerned a First Amendment right of access to criminal trials based in part on the recognition that as a general matter criminal trials have long been presumptively open." *Id.* The question of whether the right applies to "any particular criminal trial, such as a murder trial . . . or a rape trial" did not depend on "the historical openness of *that type* of criminal trial." *Id.* (emphasis added); *accord Dhiab*, 852 F.3d at 1104 (Williams, J., concurring) (discussing *Globe Newspaper* and noting that "the Court applied its experience-and-logic tests to criminal trials generally, rejecting the state's effort to make the classification at the level of the testimony in question – that of a minor child in a sexual abuse case").

Just as in *Globe Newspaper*, therefore, where the Supreme Court decided that the proper question was whether the First Amendment right of access applies to criminal trials *generally*, not to a specific type of testimony at a specific type of trial, the question before this Court is whether the right of access applies to judicial

35

opinions and orders *generally*, not whether it applies to opinions and orders issued in specific types of proceedings, such as ancillary proceedings.  Because *Dow Jones* and *Judith Miller II* did not reach that specific question, this Court should do so and, given the extensive history and compelling logic discussed above, recognize that the constitutional right of access applies to opinions and orders.

### C.  The Government Cannot Justify Completely Sealing These Opinions And Orders Of Intense Public Interest And Importance.

If the Court agrees that the First Amendment right of access applies to judicial opinions and orders, then to justify withholding from the public the court opinion(s) and order(s) adjudicating claims of executive privilege at issue here, the Government must demonstrate that such sealing "is essential to preserve higher values and is narrowly tailored to serve that interest."  *Dhiab*, 852 F.3d at 1102 (Williams, J., concurring) (citation omitted).  Specifically, to overcome the constitutional access right the Government must demonstrate that:

a.  There is a substantial probability of prejudice to a compelling interest if the right is not limited.  *Press-Enterprise II*, 478 U.S. at 13-14; *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise I*"), 464 U.S. 501, 510 (1984); *Richmond Newspapers*, 448 U.S. at 580-81.

b.  There is no alternative to a limitation of the access right that will adequately protect against the threatened harm.  *Press-Enterprise II*, 478 U.S. at 13-14; *Washington Post v. Robinson*, 935 F.2d 282, 289-90 (D.C. Cir. 1991).

36

c.   Restricting access will effectively protect against the threatened harm. *Press-Enterprise II*, 478 U.S. at 14; *Robinson*, 935 F.2d at 291-92.

d.   The restriction on access is narrowly tailored to minimize the harm to the public's access rights. *Press-Enterprise II*, 478 U.S. at 13-14; *Robinson*, 935 F.2d at 287; *cf. Shelton v. Tucker*, 364 U.S. 479, 488 (1960) ("legitimate and substantial" interests "cannot be pursued by means that broadly stifle fundamental personal liberties").

Whether this Court decides to address these issues itself or to remand for the District Court to consider them in the first instance, two points bear emphasis.

First, the Supreme Court and this Court have consistently released opinions resolving disputes in ancillary proceedings – including opinions of major public interest – with narrow redactions rather than blanket withholdings. *See, e.g.*, *Branzburg*, 408 U.S. 665 (arising out of journalists' motions to quash grand jury subpoenas); *In re Judith Miller I*, 438 F.3d 1141 (same); *supra* at 28-29 (discussing *In re Sealed Case No. 99-3091*, 192 F.3d 995, and *In re Sealed Case*, 932 F.3d 915).

Second, in deciding what if any material must be redacted to protect the secrecy of matters before the grand jury, this Court has instructed that "[t]here is no per se rule against disclosure of any and all information which has reached the grand jury chambers." *Senate of the Commw. of Puerto Rico on Behalf of Judiciary Comm. v. Dep't of Just.*, 823 F.2d 574, 582 (D.C. Cir. 1987) (Ginsburg, J.). "The disclosure of information coincidentally before the grand jury which can

37

be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury is not prohibited." *Id.* (cleaned up).

With these principles in mind, this Court (or, on remand, the District Court) should conclude that the First Amendment right of access requires the release of any opinion(s) and order(s) adjudicating claims of executive privilege over communications between Trump and former Trump Administration officials with only those narrow redactions necessary to protect grand jury secrecy.

## **CONCLUSION**

For the foregoing reasons, this Court should vacate the ruling below and remand the matter back to the District Court for reconsideration.

Dated:  July 14, 2023    Respectfully submitted,

/s/ Chad R. Bowman
Chad R. Bowman
Charles D. Tobin
Maxwell S. Mishkin
Lauren Russell
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
bowmanchad@ballardspahr.com
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballardspahr.com

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.    This document complies with the type-volume limit of FRAP 32(a)(7)(B)(i) because, excluding the parts of the document exempted by FRAP 32(f) and D.C. Circuit Rule 32(e)(1), this document contains 8,762 words.

2.    This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point Times New Roman font.

Dated:  July 14, 2023            /s/ *Chad R. Bowman*

                                     Chad R. Bowman

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this date, I caused the foregoing to be filed and served electronically via the Court's ECF System upon all counsel of record.  I further certify that, pursuant to Circuit Rule 31(b), I caused eight paper copies of the foregoing to be filed via USPS Priority Mail Express to the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit.

Dated:  July 14, 2023          /s/ *Chad R. Bowman*
                               Chad R. Bowman

40

## PERTINENT STATUTORY PROVISIONS

**Rule 6, Federal Rules of Criminal Procedure**

(a)    Summoning a Grand Jury.

    (1)    In General. When the public interest so requires, the court must order that one or more grand juries be summoned. A grand jury must have 16 to 23 members, and the court must order that enough legally qualified persons be summoned to meet this requirement.

    (2)    Alternate Jurors. When a grand jury is selected, the court may also select alternate jurors. Alternate jurors must have the same qualifications and be selected in the same manner as any other juror. Alternate jurors replace jurors in the same sequence in which the alternates were selected. An alternate juror who replaces a juror is subject to the same challenges, takes the same oath, and has the same authority as the other jurors.

(b)    Objection to the Grand Jury or to a Grand Juror.

    (1)    Challenges. Either the government or a defendant may challenge the grand jury on the ground that it was not lawfully drawn, summoned, or selected, and may challenge an individual juror on the ground that the juror is not legally qualified.

    (2)    Motion to Dismiss an Indictment. A party may move to dismiss the indictment based on an objection to the grand jury or on an individual juror's lack of legal qualification, unless the court has previously ruled on the same objection under Rule 6(b)(1). The motion to dismiss is governed by 28 U.S.C. § 1867(e). The court must not dismiss the indictment on the ground that a grand juror was not legally qualified if the record shows that at least 12 qualified jurors concurred in the indictment.

(c)    Foreperson and Deputy Foreperson. The court will appoint one juror as the foreperson and another as the deputy foreperson. In the foreperson's absence, the deputy foreperson will act as the foreperson. The foreperson may administer oaths and affirmations and will sign

all indictments. The foreperson--or another juror designated by the foreperson--will record the number of jurors concurring in every indictment and will file the record with the clerk, but the record may not be made public unless the court so orders.

(d)    Who May Be Present.

(1)    While the Grand Jury Is in Session. The following persons may be present while the grand jury is in session: attorneys for the government, the witness being questioned, interpreters when needed, and a court reporter or an operator of a recording device.

(2)    During Deliberations and Voting. No person other than the jurors, and any interpreter needed to assist a hearing-impaired or speech-impaired juror, may be present while the grand jury is deliberating or voting.

(e)    Recording and Disclosing the Proceedings.

(1)    Recording the Proceedings. Except while the grand jury is deliberating or voting, all proceedings must be recorded by a court reporter or by a suitable recording device. But the validity of a prosecution is not affected by the unintentional failure to make a recording. Unless the court orders otherwise, an attorney for the government will retain control of the recording, the reporter's notes, and any transcript prepared from those notes.

(2)    Secrecy.

(A)    No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B).

(B)    Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury:

(i)    a grand juror;

A-2

(ii)   an interpreter;

(iii)   a court reporter;

(iv)   an operator of a recording device;

(v)   a person who transcribes recorded testimony;

(vi)    an attorney for the government; or

(vii)   a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii).

(3)   Exceptions.

(A)   Disclosure of a grand-jury matter--other than the grand jury's deliberations or any grand juror's vote--may be made to:

(i)   an attorney for the government for use in performing that attorney's duty;

(ii)   any government personnel--including those of a state, state subdivision, Indian tribe, or foreign government--that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law; or

(iii)   a person authorized by 18 U.S.C. § 3322.

(B)   A person to whom information is disclosed under Rule 6(e)(3)(A)(ii) may use that information only to assist an attorney for the government in performing that attorney's duty to enforce federal criminal law. An attorney for the government must promptly provide the court that impaneled the grand jury with the names of all persons to whom a disclosure has been made, and must certify that the attorney has advised those persons of their obligation of secrecy under this rule.

A-3

(C)    An attorney for the government may disclose any grand-jury matter to another federal grand jury.

(D)    An attorney for the government may disclose any grand-jury matter involving foreign intelligence, counterintelligence (as defined in 50 U.S.C. § 3003), or foreign intelligence information (as defined in Rule 6(e)(3)(D)(iii)) to any federal law enforcement, intelligence, protective, immigration, national defense, or national security official to assist the official receiving the information in the performance of that official's duties. An attorney for the government may also disclose any grand-jury matter involving, within the United States or elsewhere, a threat of attack or other grave hostile acts of a foreign power or its agent, a threat of domestic or international sabotage or terrorism, or clandestine intelligence gathering activities by an intelligence service or network of a foreign power or by its agent, to any appropriate federal, state, state subdivision, Indian tribal, or foreign government official, for the purpose of preventing or responding to such threat or activities.

    (i)    Any official who receives information under Rule 6(e)(3)(D) may use the information only as necessary in the conduct of that person's official duties subject to any limitations on the unauthorized disclosure of such information. Any state, state subdivision, Indian tribal, or foreign government official who receives information under Rule 6(e)(3)(D) may use the information only in a manner consistent with any guidelines issued by the Attorney General and the Director of National Intelligence.

    (ii)    Within a reasonable time after disclosure is made under Rule 6(e)(3)(D), an attorney for the government must file, under seal, a notice with the court in the district where the grand jury convened stating that such information was disclosed and the

A-4

departments, agencies, or entities to which the disclosure was made.

(iii)    As used in Rule 6(e)(3)(D), the term "foreign intelligence information" means:

    (a)    information, whether or not it concerns a United States person, that relates to the ability of the United States to protect against--

        • actual or potential attack or other grave hostile acts of a foreign power or its agent;

        • sabotage or international terrorism by a foreign power or its agent; or

        • clandestine intelligence activities by an intelligence service or network of a foreign power or by its agent; or

    (b)    information, whether or not it concerns a United States person, with respect to a foreign power or foreign territory that relates to--

        • the national defense or the security of the United States; or

        • the conduct of the foreign affairs of the United States.

(E)    The court may authorize disclosure--at a time, in a manner, and subject to any other conditions that it directs--of a grand-jury matter:

    (i)    preliminarily to or in connection with a judicial proceeding;

A-5

        (ii)    at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;

        (iii)   at the request of the government, when sought by a foreign court or prosecutor for use in an official criminal investigation;

        (iv)   at the request of the government if it shows that the matter may disclose a violation of State, Indian tribal, or foreign criminal law, as long as the disclosure is to an appropriate state, state-subdivision, Indian tribal, or foreign government official for the purpose of enforcing that law; or

        (v)    at the request of the government if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law.

(F)    A petition to disclose a grand-jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened. Unless the hearing is ex parte--as it may be when the government is the petitioner--the petitioner must serve the petition on, and the court must afford a reasonable opportunity to appear and be heard to:

        (i)    an attorney for the government;

        (ii)   the parties to the judicial proceeding; and

        (iii)   any other person whom the court may designate.

(G)    If the petition to disclose arises out of a judicial proceeding in another district, the petitioned court must transfer the petition to the other court unless the petitioned court can reasonably determine whether

disclosure is proper. If the petitioned court decides to transfer, it must send to the transferee court the material sought to be disclosed, if feasible, and a written evaluation of the need for continued grand-jury secrecy. The transferee court must afford those persons identified in Rule 6(e)(3)(F) a reasonable opportunity to appear and be heard.

(4)     Sealed Indictment. The magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. The clerk must then seal the indictment, and no person may disclose the indictment's existence except as necessary to issue or execute a warrant or summons.

(5)     Closed Hearing. Subject to any right to an open hearing in a contempt proceeding, the court must close any hearing to the extent necessary to prevent disclosure of a matter occurring before a grand jury.

(6)     Sealed Records. Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury.

(7)     Contempt. A knowing violation of Rule 6, or of any guidelines jointly issued by the Attorney General and the Director of National Intelligence under Rule 6, may be punished as a contempt of court.

(f)     Indictment and Return. A grand jury may indict only if at least 12 jurors concur. The grand jury--or its foreperson or deputy foreperson-- must return the indictment to a magistrate judge in open court. To avoid unnecessary cost or delay, the magistrate judge may take the return by video teleconference from the court where the grand jury sits. If a complaint or information is pending against the defendant and 12 jurors do not concur in the indictment, the foreperson must promptly and in writing report the lack of concurrence to the magistrate judge.

(g)    Discharging the Grand Jury. A grand jury must serve until the court discharges it, but it may serve more than 18 months only if the court, having determined that an extension is in the public interest, extends the grand jury's service. An extension may be granted for no more than 6 months, except as otherwise provided by statute.

(h)    Excusing a Juror. At any time, for good cause, the court may excuse a juror either temporarily or permanently, and if permanently, the court may impanel an alternate juror in place of the excused juror.

(i)    "Indian Tribe" Defined. "Indian tribe" means an Indian tribe recognized by the Secretary of the Interior on a list published in the Federal Register under 25 U.S.C. § 479a-1.